Mr. Justice Cox
delivered the opinion of the court.
On the 3rd of July, 1879, a contract was made between William Lawson and William H. Hazle on the one part, and -James E. Miller on the other, that the firm of Lawson & *146 Hazle were to erect three houses for Miller on a lot of ground owned by him, at an aggregate cost of $8,499. The price was to be paid in seven different instalments, the last instalment when the houses were completed and the keys turned over to defendant Miller; with this exception, that 25 per cent, was to be reserved from each instalment and retained by Miller until thirty days after the dwelling-houses should have been completed and the keys of the same turned over by Lawson & Hazle, or their representatives, to him. The houses were to be completed iu four months; that is, by the third of November ; and it was stipulated that if the contractors should fail to complete them within the four months, Miller should have the right to charge them $50 for each week of delay in the completion. It was further stipulated that if the contractors should fail to finish the houses within a period of Jive months from the execution of the contract, Miller should have “ full power and authority to employ other person or persons to finish and complete the said dwelling-houses or residences, at the cost and expense of the said Lawson & Hazle, their executors, &c.; which cost will and can be deducted' by said Miller from any money which may be in his possession at the time of said failure ” on the part of Lawson & Hazle to complete the dwelling-houses, &c.
Lawson & Hazle employed this plaintiff, John B. Hammond, as sub-contractor, to furnish certain materials, doors, windows, blinds, &c., but Hammond was unwilling to deliver these materials on the credit of Lawson & Hazle only, and required an order upon the defendant, the owner of the ground, and the acceptance of such order by him before he would deliver the materials. Accordingly, Lawson & Hazle made this order:
“ Sir : You will please pay John B. Hammond for materials for your three houses, which we are erecting for you, &c., * * * the sum of $796.54, and deduct the same out of payment which will be due us on the completion of said houses.”
On the paper was written: “ This order is hereby accepted, *147 payable when Messrs. Lawson & Hazle complete the three houses herein stated; that is, per contract. James E. Miller.”
Lawson & Hazle failed to complete the houses by the-third of November, and thirty days more time was given them. They failed to complete them by that time, and' after having done perhaps three-fourths of the work, they formally abandoned the contract and refused to complete the houses. The defendant, Miller, after importuning them to go on with the work, and calling upon the plaintiff also, in his own interest, to prevail upon them to complete the houses, seems to have acted upon the assumption that there was no more to be expected from them, and to have taken possession of the houses. Having taken possession, he entered into new contracts in his own name with other parties and went on to finish the houses at his own expense. At the time when Lawson & Hazle formally refused to go on with the work, Miller had paid them all that was due them for the work already done, and a little over, including even the 25 per cent, which, by the contract, he had been entitled to reserve; so that at- that time he owed them nothing. As I have said, he then proceeded to finish the houses himself, under new contracts with other persons. In making these new contracts, he effected a saving, upon the price stipulated in the original contract, of $382.19 ; that is, he got the work done for so much less than Lawson & Hazle would have been entitled to if they had done the work under their contract.
Then this plaintiff, Hammond, the sub-contractor, sued Miller upon this accepted order, calling it a bill of exchange, and included in his declaration the common counts. At the trial below, several exceptions were taken to the ruling of the court, but the most important one relates to the last instruction which the judge gave the jury, to return a verdict in favor of the plaintiff for the sum of $382.19, the amount found in the defendant’s hands after he had completed the houses. To that instruction of the court the defendant excepted. Now, in giving this instruction, the court below *148 clearly proceeded upon the theory that when the defendant took possession of the unfinished houses and completed them, he did so in the interest of the defaulting contractors and substantially as their agent, and that the defaulting contractors, being chargeable with the cost of building the houses, were entitled to credit for the balance of the contract price. This leads us to consider what are the rights of a contractor who has partly performed his contract and then refuses to complete it. ¥e speak now in the first instance of his rights at common law independent of any special provision such as is contained in this contract, and is relied upon particularly by the plaintiff". It is perfectly well settled at common law that if a man partly performs his contract and then refuses to complete it, he has no right of action upon the contract even for the work which has been done. The later authorities go further than -that. For instance, the rule is laid down in 2 Smith’s Leading Cases, (Am. Ed. Hare’s Notes, p. 25), in comments upon the case of Cutter vs. Powell: “ But if there has been an entire ■executory contract, and the plaintiff has performed a part of it, and then wilfully refuses, without legal excuse and against the defendant’s consent, to perform the rest, he can recover nothing, either in general or special assumpsit.”
But there are cases which hold that where the work has been partially performed and is accepted even under compulsion, that' is, where it cannot be avoided by the other party, that fact alone raises an implied assumpsit to pay the reasonable value of the work which has been so accepted and used. But it is perfectly clear that even if the party can recover upon the contract for work which is already done, he cannot recover upon the contract for work which he did not do and which he refused to do. His rights under the contract are gone when he abandons it, and the other party has a right to treat it at once as at an end. In this case the owner had paid for all the work that had been done. He had the right, immediately upon the default of the contractors, to take possession of the unfinished houses, as he did take possession of them, and to finish them if he pleased, or *149 to sell them to somebody else, or to employ other persons to do the work which the contractors had been engaged to do and had refused to do. Under no such circumstances can it be conceived that the contractors so in default could have a claim upon the owner of the land. They certainly could not sue upon an implied assumpsit for work which had been done by other people. They certainly could Dot sue upon the contract, because they would have been compelled either to aver and prove that they had performed the contract, or to aver a readiness to perform it, and that they were prevented from doing so by the other party. The only theory under which a right of that kind could be maintained by the contractors against the owner would be that, although they had repudiated the obligation of the contract, they still retained the benefit of the contract ; that although they refused to do the work they still had the right to do it, and that nobody else could do it except in subjection to them and as their agent, and that the owner of the ground could not rescind the contract, notwithstanding the refusal of the contractors to complete it; all which conclusions are in our opinion so heterodox that they do not need any discussion.
But in this particular case reliance is placed upon this peculiar clause in the contract as modifying the common law rights of the parties : “ The said Miller shall have full power and authority to employ other person or persons to finish and complete said dwelling-houses at the cost and expense of said Lawson & Hazle ; which cost or expense will and can be deducted by said Miller from any money which may be in his possession at the time of said failure on the part of said Lawson & Hazle to complete and finish said dwelling-houses.”
It is argued that when the houses were completed by the owner, it was substantially, under the terms of the contract,, a completion by him as the agent of the contractors and on their account, and that therefore they are entitled to credit for the contract price, while they are to be charged simply with the cost of completion. It is to be observed in the first place, that the language of this contract does not make it *150 the duly of the owner to pursue this course, but simply provides that he shall have power and authority to do so. We do not understand that this takes away from him the right to resort to his common law right to rescind the contract, ignore the contractors, and proceed to finish the houses on his own account; but simply that this power is given to him to secure the completion of the contract by the contractors, if he chooses to resort to it. And the operation of it is simply this: In the absence of this provision in the contract, the contractors, after finishing a large part of the -work and then declining to complete it, might say to the defendant: “ The 25 per cent, which you have in your hands, reserved from the several instalments, is our money; we have earned it by work already done, and you have no right to apply it to anything else.” To which the owner might answer : “ But, by the terms of this contract, you engaged to do certain work which you have not done, and under the contract I am entitled to apply your money, now in my hands, to the completion of t,he work.” This, I think, was unquestionably the object of this provision, and, as we have said, it left it optional with the owner, whether he would resort to this means of completing thé work, or would treat the contract as wholly rescinded and proceed to have the work done upon his own responsibility and for his own benefit. A case in New York is cited which is supposed to be analogous to the present one, the case of Murphy vs. Buckman 66 N. Y., 297. The contract in that case was a building contract and It provided in reference to the contractor, that should he at any time during the progress of the work refuse or neglect to supply sufficient materials or workmen, the owner should be at liberty to provide materials and workmen, after three days’ notice in writing being given, to finish said work; and the amount should be deducted from the amount in the contract.
In that case the contractor having been delinquent in supplying materials and workmen, the owner gave him the notice provided for in the contract, and, upon the continued delinquency of the contractor, the owner furnished the needed *151 materials and workmen, and after the completion of the work, when the cost of completion was deducted from the ■contract price, there was found to remain in his hands a considerable sum of money which it was held that the ■contractor was entitled to recover. The court said that the defendant, by electing to go on under the clause of the contract to which I have called attention, waived his right ■to insist upon a forfeiture for the failure of the contractor. The owner was not precluded from claiming damages thereafter from the contractor for defective performance, or from a suit to recoup himself for work done under the contract ; but he could not avail him of the right given him by the contract to go on and complete the work, and then refuse •to account to the contractor upon the ground that the contract was forfeited ; for, the court say, “ the election to do the work at the contractor’s expense under the clause referred to, assumed that the contract was then in force.” There are two features in which this case differs from that at bar. In the first place, in the New York case, the stipulation was that the owner might, upon giving due notice to the contractor, complete the house at the contractor’s expense and deduct such expense from the contract price ; which by necessary implication assumes that the balance of the contract price is still the property of the contractor, and that the work is done in pursuance of the contract, the owner substituting himself for the contractor in the -work; and the owner having done that, it did not lie in his mouth to say that the contract was not in existence and the contractor not entitled to the balance remaining after the work was done. In the- present case the stipulation is not that the expense of completing the work shall be deducted from the contract price, but that it shall be deducted from any money belonging to the contractors which the owner may have in his hands at the time of the contractor’s failure or refusal to finish the work. This, of course, assumes that the contractor is entitled to the money retained by the owner for work already done, money retained under the 25 per cent, clause ; but it does not assume the right of the con *152 tractor to the balance.of the contract price for work which; he did not do and which the owner was compelled to have-done by other persons. On the contrary, by implication it. excludes any recognition of the contractor’s right to that unearned balance. Nevertheless, it might be conceded! that if there had remained in the hands of the defendant any money due the contractors for work already executed*, and he had applied that money to the completion of the-houses, the argument would have great force, that the.contractors’ money finished the work, and that therefore it should be held to have been finished in contemplation of' law by them, and hence, that they would be entitled to the-balance of the contract price. In the New York case it rvas. provided in the contract that the owner should give certain notice to the contractor to go on with the work, and that; upon the contractor’s failure to do so, the owner might then go on and complete it himself, and, therefore, the court assumed that it was in the election of the owner either to pursue that course or to fall back upon his common law right*, and the court held that he had elected to proceed under this; stipulation in the contract, and, therefore, could not fall back upon his common law right. But in the present case that element is wanting. And as to the money mentioned in the stipulation, there was no money remaining in the owner’s, hands at the time the contractors refused to proceed with, the work; therefore, as matter of fact, the money of the-contractors did not go to the completion of the work, and: the reason which existed in the other case, and which might exist under different circumstances in this case, for holding that the completion of the houses was the work of the; contractors, wholly fails.
The owner in this case did not assume to proceed under this, special provision of the contract. He had the right as we have* said, either to do that, or to fall back upon his common law-right and rescind the contract and proceed to finish the work for his own benefit. He did not notify the contractors that he meant to' proceed .under this stipulation ; he had no money of theirs with which to indemnify himself for th©r *153 cost of completing the work ; he did not proceed under any sub-contracts made by the contractors; but he entered into possession of the houses (which if he were proceeding under the contract he would have no right to do until the completion of the contract) ; he made new contracts in his own name with third parties and at his own cost and expense, and when he effected a saving it is perfectly obvious that he did not do it for the benefit of those contracto rs but for his own benefit,'and therefore that he expected and intended to exercise his common law right for his own benefit and not for the benefit of the contractors, and this it is clear he had a perfect right to do.
Some question might be made as to whether the existence of the order in favor of the plaintiff’ would make any difference as to the defendant’s power of electing to proceed under the contract or to fall back upon his common law rights ; but the case does not present the facts for raising that question, because it does not appear that the defendant ever had it in his power to have the work completed with the contractors’ money. If he had had money belonging to the contractors in his hands, it is questionable whether that might not have made it obligatory on him to proceed under the contract, but, as he had no money of the contractors in his hands after he accepted this order, and no power of election, this question does not rise upon the facts presented.
As it now stands, it appears to us that the owner, upon default of the contractors, proceeded under his common law right to rescind the contract, and take possession of the property and complete the houses for his own use and benefit, and that the contractors had no further claim upon him whatever, so that when he effected a saving it was for his own advantage, and not for that of the contractors, and does not come in any way within the scope of this stipulation in the contract. Therefore there was an error in this instruction of the court below which entitles the defendant to a new trial.
But this does not end the case. It appears by the contract that the defendant had the right to reserve 25 per *154 cent, of such instalment to be held until thirty days after the completion of the houses; evidently to secure the performance of the contract. In that condition of things he accepts an order from the contractors in favor of a sub-contractor, agreeing to deduct the amount of the sub-contractor’s claim out of payments which will be due to the contractors on the completion of the houses by them. Now, if he paid any money after that to the contractors which he might have retained, and which was payable only on completion of the contract by them, it would seem that he paid that in his own wrong, and that, upon proof of that fact, the sub-contractor might maintain an action against him to the extent of any money so paid away to the wrong of the sub-contractor. But the evidence set out in the bill of exceptions hoes not disclose what the facts are in that respect, and it remains for the plaintiff to bring out the necessary facts on a new trial of the cause.